### OLIVER CHRISTMAS v. PETER FREI.

*Contract—Receipt—Fraud—Parol evidence.*

The main question in this case is held to be whether there was any evidence to go to the jury tending to show fraud in obtaining the contract or the receipt referred to in the opinion, which question is decided in the affirmative.

Error to Marquette. (Grant, J.) Argued October 29, 1889. Decided December 28, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. O. Clark,* for appellant, contended:

1. The fact that plaintiff had a different understanding of the contract, notwithstanding it was read and shown to him, will not show fraud in any sense; citing *Adair v. Adair,* 5 Mich. 204; *Nye v. Van Husan,* 6 Id. 329; *Kulenkamp v. Groff,* 71 Id. 675.

2. Parol evidence cannot be received to add to the terms of a written instrument; citing *Sutherland v. Crane,* Walk. Ch. 523; *Adair v. Adair,* and *Kulenkamp v. Groff, supra; Skeels v. Starrett,* 57 Id. 352; *Cline v. Hubbard,* 31 Id. 239.

3. Fraud cannot be presumed, but must be proved, the same as any other fact; citing *Robert v. Morrin,* 27 Mich. 308; and actual deception must be shown; citing *Hamilton v. Billingsley,* 37 Id. 107; and a verdict like the one at bar should be set aside; citing *Campau v. Lafferty,* 50 Id. 114, 117.

*Mapes & Kinkade,* for plaintiff, contended:

1. A parol agreement as to the consideration to be paid for a conveyance of land need not be in writing in order to be enforced after a conveyance has been made, and may be enforced *then* according to its terms, although the deed recites a different consideration; citing *Nutting v. Dickinson,* 8 Allen, 540; *Price v. Sturgis,* 44 Cal. 591; *Tuthill v. Roberts,* 22 Hun., 304; *Babcock v. Read,* 50 N. Y. Sup. Ct. 126; *Miller v. Kendig,* 55 Iowa, 174.

SHERWOOD, C. J. In the month of June, 1888, the plaintiff and defendant were the owners of an option for a lease on forty acres of land in Marquette county for mining explorations, each owning an undivided half interest therein. Some time after the parties had received said option the plaintiff assigned to the defendant an additional one-quarter interest. A treaty was had by the parties with a J. R. Case, with a view of selling Case their interest under said option. The plaintiff was to have an undivided one-fourth interest in the rights under the option, and defendant, and other parties with them, were to have the other three-fourths; they bearing

all the expense of exploring the property, and the mining and developing of the minerals found thereon, until the property should be sold.

After a short time all of the owners of the option gave to Case an option for the purchase of their interest for $15,000, which expired about June 26, and about this time Case telegraphed the defendant to go to Detroit to close a trade. Defendant sent for plaintiff, and they met at Mr. Moore's office. Mr. Moore was an attorney. Four others had become interested at that time with the parties in the original option, and all were anxious to sell at almost any price, except the plaintiff, and were willing to accept any price that defendant would take, when he met Case in Detroit, and take their *pro rata* share; and then and there, in Mr. Moore's office, the following agreement was drawn up and signed by the plaintiff:

"For and in consideration of the sum of one dollar, and other good and valuable considerations, to me in hand paid, the receipt whereof I hereby acknowledge, I hereby agree to sell, transfer, and set over to Peter F. Frei or his assigns, at any time within four days from this date, all my right, title, and interest whatsoever, of, in, and to a certain option for a mining lease, with blank lease attached, made and executed by the Iron Cliffs Company to Peter F. Frei and Oliver Cliche, for the north-east quarter of north-west quarter sec. one (1), T. 47 N., R. 25 W., Marquette county, Michigan, at and for the sum of three thousand dollars cash; and, if said money is paid to me within said four days in cash, I hereby promise and agree to make, execute, and deliver all necessary and proper papers to transfer my said interest in said option.

"*Dated Marquette, June 26, 1888.*"

The plaintiff made his mark, not being able to either read or write, and in his testimony he says the instrument was never read to him; and he further testifies that the agreement was that, if Frei was compelled to take $12,000 or less on the trade, the plaintiff was to take

$3,000 for his interest, and if the property was sold for more than $12,000 he was to have one-fourth of whatever sum was received, and the defendant represented to him that such were the terms of the written contract.

Frei went to Detroit, obtained $15,000, and returned to Marquette, and, as claimed by the plaintiff, represented to him that he had made the sale for $12,000, and upon this representation obtained a receipt from the plaintiff, reading as follows:

"I hereby acknowledge the receipt from Peter F. Frei of the sum of three thousand dollars, mentioned as the purchase price herein provided for, and I do hereby release said Peter F. Frei from all liability to me on account of said option, and the lands described herein."

The plaintiff further claims that for some time he did not learn of the true facts in the case, but, after he did, he at once brought this suit to recover the additional $750, to which he claims to be entitled, and of which he has been deprived by the fraud of the defendant.

Certain errors are claimed to have been made by the court in the admission of evidence objected to, and in submitting the case to the jury, but the main question in the case is, was there any evidence to go to the jury tending to show fraud in obtaining the contract or the receipt from the plaintiff? These questions were submitted to the jury, and their verdict is against the defendant. I think the testimony, under the circumstances surrounding the obtaining of these two instruments, tended to show the fraud claimed, and was properly submitted to the jury; and if there is any error in the case it must be found in taking the testimony, or in the charge under which it was submitted to the jury. I have looked through the testimony, and examined each of the objections made and exceptions taken, and, had not the question of fraud been raised, undoubtedly several

of the exceptions would have to be sustained; but, in view of the issue presented and the theory of the plaintiff, the court did not transcend the rule in taking the testimony, and an inspection of the charge shows no fault in it. The law applicable to the case was fully given to the jury, and the judgment must be sustained.

CHAMPLIN, MORSE, and CAMPBELL, JJ.; concurred. LONG, J., did not sit.